UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FATHI AWAD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. ED CV 05-176-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 9, 2005, seeking review of the Commissioner's denial of benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on April 5, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 10, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

/

## II.

## **BACKGROUND**

Plaintiff was born May 23, 1954. He has an education through the seventh grade and past work experience as a cashier and a store stocker. [See Administrative Record, "AR", at 31, 32, 34, 72, 86, 91.]

Plaintiff protectively filed applications for supplemental security income and disability insurance benefits on March 10, 2003. Plaintiff alleged that his disability due to pain in his back, arms, and legs, and problems with lifting began on March 2, 2003. [AR at 11, 69-96.] After his applications were denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 25.] A hearing was held on September 9, 2004. Plaintiff appeared with counsel and testified on his own behalf. Testimony was also presented by a vocational expert. [AR at 28-50.] On October 13, 2004, the ALJ concluded that plaintiff was not under a disability during the relevant period and thus was not entitled to benefits. [AR at 11-16.]

When the Appeals Council denied review on January 11, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 3-5.]

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving social security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting the ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his or her past work; if so, the claimant is not disabled and the claim is denied. Id. The plaintiff has the burden of proving that he or she is

unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he or she can perform other substantial gainful work available in the national economy; the determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 2, 2003. [AR at 12.] He thus meets step one of the five-step process. At step two, the ALJ concluded that plaintiff's impairment -- mild right shoulder rotator cuff problems -- is severe. [AR at 14,15.] The ALJ next found that this impairment, however, does not meet or equal any impairments in the Listing (step three). [Id.] The ALJ further found that plaintiff has the residual functional capacity[1] to "perform light work[2] generally, with occasional climbing, balancing, stooping, kneeling, crouching and crawling. He is limited to occasional overhead reaching and occasional gross manipulation with the right hand." [AR at 14.] At step four, the ALJ concluded that plaintiff was unable to perform his past relevant work. [AR at 14.] At step five, the ALJ determined, using the Medical-Vocational Guidelines as a framework and the vocational expert's testimony, that there are a significant number of jobs that plaintiff was capable of performing. [AR at 14-16.] Accordingly, the ALJ determined that plaintiff was not disabled at any time through the date of the decision and was not entitled to benefits. [AR at 16.]

---

[1]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]   According to 20 CFR §§ 404.1567(b) and 416.967(b), "light work" is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

4

# V.

# **THE ALJ'S DECISION**

In the Joint Stipulation, plaintiff argues that: (1) the ALJ failed to properly consider the opinions of plaintiff's treating physicians, and (2) the ALJ failed to properly develop the record. For the reasons discussed below, the Court respectfully disagrees with plaintiff, and affirms the Commissioner's decision.

**A.    THE EVIDENCE**

At the time of the hearing, plaintiff was 50 years old and had an education through the seventh grade. [AR at 31-32.] He last worked as a cashier and stocker at a market for about 14 years. [AR at 34-35.] In that position he was frequently required to carry inventory that weighed between 20 and 25 pounds. [AR at 86.] He stopped working on March 2, 2003, after he was injured on the job. [AR at 33-34, 39, 85.]

Plaintiff testified that he was unable to work because of pain in his legs, his lower back, his shoulders, and his right wrist. Plaintiff also experienced numbness in his arms "every now and then." [AR at 35-37.] Plaintiff testified that his pain "comes and goes." He takes Motrin 800 for pain, but plaintiff testified that it does not help. [AR at 37.] Plaintiff testified that he sometimes gets dizzy and has a lot of trouble sleeping at night because of the pain. [AR at 40-41.] He thought that he could sit for only about 10 to 15 minutes before his legs go numb, that he could stand for only about 10 to 15 minutes before he experiences a lot of pain, and that he could walk only about a quarter of a mile. [AR at 42-44.] Plaintiff testified that he was unable to lift his 5 year old daughter who weighs almost 40 pounds and that he could comfortably lift about 10 to 15 pounds. [AR at 43-44.] Plaintiff was in physical therapy for about a month and a half. He was told by the therapist that he would need a lot more physical therapy, but his insurance would not cover the cost. [AR at 45-46.]

The Vocational Expert testified that if plaintiff was able to perform light work with occasional stooping, kneeling, crouching and crawling, and occasional gross manipulation, plaintiff could not perform either of his past jobs. [AR at 48.] However, the Vocational Expert testified that there was

other work that plaintiff would be able to perform, such as a rental clerk, school bus monitor, or surveillance monitor. [AR at 48-49.]

The medical evidence indicates that plaintiff was seen on May 6, 2003, by Dr. J. Pierce Conaty for an orthopedic evaluation. At that time, plaintiff complained of "right shoulder pain" and "low back discomfort." Dr. Conaty found that plaintiff was not in acute distress, did not use any ambulatory devices, displayed normal head carriage and normal extremity alignment. Dr. Conaty found no evidence of muscle spasm, swelling, or masses and no evidence of muscle atrophy. Additionally, Dr. Conaty found that plaintiff had a normal range of motion for his spine, left shoulder, elbows, wrists, hands, hips, knees, and ankles. Dr. Conaty found some limitation in the range of motion of the right shoulder and discomfort in the extreme ranges. Muscle strength in the neck and the upper and lower extremities appeared normal. No tenderness was found in the thighs or legs, but there was some tenderness in the paraspinal muscles. There was normal sensation to pinprick in the upper and lower extremities. Plaintiff demonstrated no difficulty rising from the sitting or supine positions. At that time, plaintiff was only taking Motrin. Dr. Conaty diagnosed a "[p]ossible rotator cuff tear, right shoulder, with secondary impingement and adhesive capsulitis." Further, Dr. Conaty found that there was no "significant clinical or radiographic findings" to substantiate the reported low back pain. [AR at 120-23.] Dr. Conaty noted that plaintiff "is in need of an MRI of the shoulder to rule out a possible rotator cuff tear." [AR at 123.] However, Dr. Conaty found that, at the time of the examination, plaintiff retained the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, and to sit, stand and walk for up to six hours in an eight-hour day. The only other limitations found by Dr. Conaty were on climbing, reaching at or above shoulder level on the right side, and some limitation in gross manipulation. [AR at 123.]

In June 2003, plaintiff went to an emergency room complaining of pain in his upper left quadrant. Plaintiff's abdomen and heart were found to be normal. [AR at 135-39, 143.] At that time, plaintiff was taking Motrin 800 for low back pain. [AR at 143.] Plaintiff was found to have a "normal gait" and was noted to be "pain free" prior to discharge. [AR at 144.]

1    Plaintiff was treated by Dr. Vinod Patwardhan and was diagnosed with pulmonary fibrosis
2 from chronic smoking and osteoarthritis.  Plaintiff did complain of back pain on June 6, 2003, and
3 Dr. Patwardhan prescribed Motrin 800.  [AR at 149-51.]  Plaintiff was referred to physical therapy
4 by Dr. Patwardhan on March 28, 2003, but was discharged on June 18, 2003, after six treatments,
5 because he was attending therapy extremely irregularly and was noncompliant with his home
6 exercise program.  He was advised to begin an independent walking program to increase his
7 overall endurance due to rapid fatigue and to perform a home exercise program.  [AR at 152.]
8    Plaintiff was also referred to urologist Dr. Boonsong Anan by Dr. Patwardhan for "bladder
9 outlet obstructive symptoms," but he was found to be symptom free on March 28, 2002.  [AR at
10 108-19.]

**B.    THE ALJ PRESENTED CLEAR AND CONVINCING REASONS TO REJECT THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS.**

14    Plaintiff argues that the ALJ rejected Dr. Conaty's recommendation that plaintiff obtain an
15 MRI to properly assess plaintiff's limitations and that the ALJ failed "to discuss all of Dr. Conaty's
16 diagnoses."  Further, plaintiff argues that the ALJ "rejected the medical opinion" of Dr. Patwardhan
17 because the ALJ rejected the physical capacity evaluation that the ALJ credited to Dr. Patwardhan
18 without providing "proper reasons."  Plaintiff argues that objective data exists regarding plaintiff's
19 conditions and points to the diagnoses by Dr. Patwardhan that plaintiff has osteoarthritis and
20 pulmonary fibrosis.  Finally, plaintiff argues that the ALJ "failed to properly consider all of Dr.
21 Patwardhan's and Dr. Conaty's diagnoses and opinions."  Joint Stipulation at 4-6.
22    The Ninth Circuit cases distinguish among the opinions of three types of physicians:  (1)
23 those who treat the claimant (treating physicians); (2) those who examine but do not treat the
24 claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-
25 examining physicians).  Lester, 81 F.3d at 830.  The opinion of a treating physician is given
26 deference because "he is employed to cure and has a greater opportunity to know and observe
27 the patient as an individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations
28 omitted).  "The opinion of the treating physician, however, is not necessarily conclusive as to either

1  the physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751
2  (9th Cir. 1989); Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989).
3      "'The administrative law judge is not bound by the uncontroverted opinions of the claimant's
4  physicians on the ultimate issue of disability, but he cannot reject them without presenting clear
5  and convincing reasons for doing so.'" Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)
6  (quoting Matthews v. Shalala, 10 F.3d at 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary
7  of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830.
8  Even if a treating physician's opinion on disability is controverted, it can be rejected only with
9  specific and legitimate reasons supported by substantial evidence in the record. Id., 81 F.3d at
10 830. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion
11 of a non-examining physician. Id. As is the case with the opinion of a treating physician, the ALJ
12 must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an
13 examining physician, and specific and legitimate reasons supported by substantial evidence in the
14 record to reject the contradicted opinion of an examining physician. Id., 81 F.3d at 830-31.
15     Here, the ALJ extensively discussed the brief medical evidence presented by plaintiff. [See
16 AR at 12-13.] Further, the ALJ adopted the opinion of Dr. Conaty regarding both plaintiff's residual
17 functional capacity and his diagnosis of plaintiff's impairment. Although plaintiff is correct that Dr.
18 Conaty noted that plaintiff should have an MRI "to rule out a possible rotator cuff tear," Dr. Conaty
19 provided his opinion of plaintiff's ability to perform work at the time of the examination taking into
20 account this impairment, and without regard to the fact that plaintiff had not had an MRI. [See AR
21 at 123.] Because the ALJ adopted Dr. Conaty's opinion, the Court finds that plaintiff's assertion
22 that the ALJ failed to provide adequate reasons to reject his opinion is not supported by the
23 record.
24     Further, the ALJ did not reject any relevant opinion of Dr. Patwardhan. Although the ALJ
25 stated that the physical capacity evaluation that plaintiff submitted during the hearing was
26 "ostensibly" completed by Dr. Patwardhan, at the time that plaintiff's attorney provided the
27 evaluation at the hearing, he credited the opinion to a "Dr. Benoid," and the evaluation itself bears
28 only an illegible signature with no name or affiliation listed. [AR at 13, 31, 172-74.] Moreover, as

the ALJ found in rejecting this evaluation, the opinion is unsupported by any objective evidence and is inconsistent with substantial evidence in the record. [See AR at 13.] The ALJ is not required to accept a medical opinion that is conclusory and inadequately supported by medical findings, especially when the opinion is in the form of a check-off report. Magallanes, 881 F.2d at 751; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). Consequently, the Court finds that, to the extent that this physical capacity evaluation may have been submitted by a treating physician, the ALJ rejected this ultimate opinion on plaintiff's disability with specific and legitimate reasons.

In addition, there is nothing in the brief treatment notes from Dr. Patwardhan that indicates that plaintiff's osteoarthritis and pulmonary fibrosis contribute to the subjective symptoms that plaintiff asserts prevent him from working. Dr. Patwardhan never indicated that plaintiff should receive any treatment other than Motrin and physical therapy for the back pain that plaintiff complained of during his visits with Dr. Patwardhan, nor did Dr. Patwardhan indicate that plaintiff's daily activities were limited in any respect by either condition. Moreover, plaintiff does not contend that his inability to work is due to any condition of his lungs. Consequently, the ALJ did not reject the diagnosis of Dr. Patwardhan except to the extent that plaintiff may be claiming that the pain of which he complains is to some degree due to osteoarthritis. However, there is no objective evidence in the treating records of Dr. Patwardhan to support such a contention and, moreover, plaintiff's failure to comply with the recommended physical therapy is an adequate ground to reject plaintiff's subjective symptom testimony on this issue. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (relevant factors include the unexplained, or inadequately explained, failure to follow a prescribed course of treatment). In addition, the ALJ's rejection of Dr. Patwardhan's diagnosis of osteoarthritis is supported by specific and legitimate reasons including the lack of objective evidence of limitations from a medically determinable impairment, the opinion of examining physician Dr. Conaty who found no limitations in movement or strength in any extremity

other than plaintiff's right shoulder, and the opinion of the non-examining state agency physician who, based on a review of the medical evidence, agreed with Dr. Conaty's opinion of plaintiff's residual functional capacity. [See AR at 12-13,126-33.] The opinion of a non-examining physician can provide evidence for the ALJ to reject the opinion of a treating physician, as long as there is other evidence in the record, as there is in this case, to support the opinion of the non-examining physician. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). Remand is not warranted on this issue.

### C.   THE ALJ DID NOT FAIL TO ADEQUATELY DEVELOP THE RECORD.

Plaintiff argues that the ALJ failed to develop the record because the ALJ did not order an MRI to "properly assess the plaintiff's limitations." Joint Stipulation at 12.

Although plaintiff bears the burden of proving disability, the ALJ in a social security case has an independent "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. Id. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288); DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) (the ALJ has the duty to develop the record further when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence). Where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ should either order a consultative examination or attempt to resolve the inconsistency by recontacting the treating physician. See 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4).

Here, the ALJ did not find that the record was inadequate, nor has plaintiff pointed to any ambiguous evidence in the record. Although examining physician Dr. Conaty did recommend that plaintiff receive an MRI, his recommendation was relevant to the proper diagnosis of plaintiff's impairment, not to the determination of plaintiff's limitations. Dr. Conaty did not find that the

1 medical evidence was insufficient to preclude his opinion on plaintiff's residual functional capacity.
2 [See AR at 123.]  Moreover, because the ALJ accepted Dr. Conaty's opinion that plaintiff was
3 likely suffering from a rotator cuff tear, the confirmation of this diagnosis with an MRI would add
4 nothing to the evidence in the record.  Remand is not warranted on this issue.

**VI.**

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for payment of benefits or remand is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: November 30, 2005

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE